

**SIGNED this 02 day of July, 2009.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**[This opinion is not intended for publication as the precedential effect is deemed limited.]**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re<br><br>    HENRY LEE PRICHARD,<br><br>                Debtor. | No. 06-50706 |
| MARK L. DAVIS,<br><br>    Plaintiff,<br><br>vs.<br><br>HENRY L. PRICHARD,<br><br>    Defendant. | Adv. Pro. No. 08-5015 |

### **M E M O R A N D U M**

APPEARANCES:

| | |
|---|---|
| Frank A. Johnstone, Esq.<br>Wilson Worley Moore Gamble & Stout P.C.<br>Post Office Box 88<br>Kingsport, Tennessee 37662<br>*Attorney for Plaintiff* | Henry L. Prichard, Pro Se<br>315 Lynfield Road<br>Bristol, Tennessee 37620<br>*Defendant* |

**Marcia Phillips Parsons, United States Bankruptcy Judge.** In this adversary proceeding, the plaintiff Mark Davis ("Plaintiff") seeks a judgment against the debtor Henry Prichard ("Debtor") for fraud and violation of the Tennessee Consumer Protection Act of 1977, as well as a determination that the judgment is nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code. Currently before the court is Plaintiff's motion for summary judgment, which will be granted. This is a core proceeding. *See* 28 U.S.C. §157(b)(2)(A) and (I).

I.

The Debtor filed for chapter 7 bankruptcy relief on August 14, 2006, and the present adversary proceeding was filed March 18, 2008.[1] The Plaintiff alleges in the complaint that the Debtor falsely represented to him that he was a licensed contractor, thereby inducing the Plaintiff to enter into two contracts with the Debtor and his company, Big South Construction, one to excavate a road and building site, and the second to excavate and pour footers. The Plaintiff further alleges that the Debtor wrongfully obtained payment from the Plaintiff on these contracts by falsely representing that the payments would be used to pay for materials and services on Plaintiff's projects when in fact they were not. The Plaintiff alleges that because of the Debtor's fraudulent actions, he had to pay an additional $40,873.18 for materials and services that Debtor had fraudulently represented had been already paid. The Plaintiff seeks judgment in this amount plus attorney fees pursuant to the Tennessee Consumer Protection Act of 1977, specifically § 47-18-104(a)(27) and (35) and § 47-18-109, as well as a determination that the judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

In his answer, the Debtor denies that he advised the Plaintiff that he was a licensed general contractor, and states that to the contrary, the Plaintiff was purposely acting as his own general contractor to save money, with the Debtor's firm engaged in subcontracting work, which for projects under $50,000 require no general contractor's license. The Debtor denies that monies paid him by the Plaintiff were used for purposes other than materials and services on Plaintiff's contracts. The Debtor states that he was only hired to build foundations for two structures and that to the extent the

---

[1] This court previously determined, by order entered February 9, 2009, that the Plaintiff did not receive timely notice of the bankruptcy filing.

Plaintiff paid additional monies for materials and supplies, it was payment for non-foundation work that was outside the parties' contracts. At the time of the filing of this answer, the Debtor was represented by attorney Bernard S. Via, III, but Mr. Via was granted permission to withdraw from this representation by order entered January 28, 2009. The Debtor has not obtained new counsel.

On May 29, 2009, the Plaintiff filed the motion for summary judgment that is presently before the court. Along with the motion, the Plaintiff filed a Statement of Undisputed Material Facts, as required by E.D. Tenn. LBR 7056-1, and a memorandum of law. The summary judgment motion is supported by the affidavit of the Plaintiff, with numerous exhibits including copies of the contracts between the parties, plus the affidavits of James Montag, Nancy Hopping, and Brent Woodford. The Debtor has not filed a formal response to the Plaintiff's motion, but he wrote a letter to the court dated June 11, 2009, wherein he sets forth a short narrative regarding the dispute. In a reply filed June 24, 2009, the Plaintiff asks the court to not consider the Debtor's letter, since it is unverified and otherwise does not comply with the rules for summary judgment. Alternatively, the Plaintiff asserts that even if considered, the Debtor's letter fails to create a genuine issue of material fact or otherwise demonstrate that summary judgment in favor of the Plaintiff should not be granted.

II.

Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056, mandates the entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (c). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249,106 S. Ct. 2505 (1986)). "A genuine issue for trial exists only when there is sufficient 'evidence on which the [court] could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252).

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions" of the record which "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

3

317, 323, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-52. In considering the motion, the court must construe all reasonable inferences in favor of the nonmoving party. *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003). The party opposing a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. The party opposing the motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* at 442-43 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986).

It is well established that "a court may not consider unsworn statements when ruling on a motion for summary judgment." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991). On the other hand, a pleading drafted by a *pro se* party is, as a general rule, held to less stringent standards than formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285 (1976). While the Sixth Circuit has noted that this relaxed standard is not without limits, *see Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996), it is unnecessary to ascertain the limits of this standard in the present case, because this court concludes, as hereafter discussed, that the Debtor's letter fails to create a genuine issue of material fact or otherwise demonstrate that summary judgment in the Plaintiff's favor is inappropriate.

### III.

Section 523(a)(2)(A) of the Bankruptcy Code provides in pertinent part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–

   . . . .

   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–

      (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

4

11 U.S.C. § 523(a)(2)(A). The Sixth Circuit Court of Appeals has held that in order for a debt to be nondischargeable under this provision, the creditor must prove: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *See AT & T Universal Card Servs. v. Rembert (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). The Plaintiff has the burden of proof which must be met by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654 (1991). Moreover, exceptions to discharge are to be strictly construed against the creditor. *In re Rembert*, 141 F.3d at 281.

The Plaintiff alleges that the Debtor falsely represented to him on more than one occasion that he was a licensed contractor, and that he would not have employed the Debtor if he had known that he did not have a Tennessee contractor's license. The documents submitted by the Plaintiff in support of his summary judgment motion indicate that neither the Debtor nor his company Big South Construction was a licensed contractor in Tennessee; that North Carolina revoked the Debtor's contractor's license in 2002; and that the Debtor was cited in 2006 for doing work in Bristol, Virginia without a license. In his June 11, 2009 letter to this court, the Debtor states that the Plaintiff "advised [him] that he would be acting as the General Contractor and that he did not wish to pay for a General Contractor," but the Debtor does not deny that he falsely told the Plaintiff that he was a licensed contractor. While the Debtor did deny in his answer that he made this representation to the Plaintiff, this denial is insufficient standing alone to create a genuine issue of material fact in light of the Plaintiff's affidavit in this regard. *See* Fed. R. Civ. P. 56(e)(2). Accordingly, the court concludes that the Plaintiff has established that the Debtor falsely represented his status as a licensed contractor.

The Plaintiff also states in his affidavit that the Debtor obtained from him sums totaling $43,411 under the two contracts in question by falsely representing that the draws were being used to pay for labor and materials on the Plaintiff's projects. With respect to the first draw of $3,000 paid by the Plaintiff on December 2, 2005, the same date the first contract was signed, the evidence does not support this contention. The Plaintiff does not set forth in his affidavit any overt misrepresentation that the Debtor is alleged to have made to induce this draw, although the Plaintiff

does assert that the Debtor "did not use the funds for the stated purpose," since he "took $200 in cash, and drew on the remaining funds to write checks to himself, his partner, and his workers, all of which checks were written before any work had been performed on my job." However, the contract provided that the $3,000 first draw was payable upon the Debtor "[p]hysically locating excavation equipment on property." There is no allegation that the Debtor failed to physically locate the equipment on the property such that he was not entitled to this draw, or that he was precluded under the contract from using the first draw to pay himself and his employees.

The same is not true for subsequent draws under the parties' contracts. As a condition precedent to payment of draws two through four under the December 2, 2005 contract, the Debtor had to provide the Plaintiff with a detailed list of persons furnishing labor and/or materials and copies of all invoices from the date of the previous draw up to the date of the requested draw. Additionally, the Debtor had to provide a notarized release from each such person indicating payment in full within ten business days. Thus, it was clear under the contract that these draws were to be used to pay for any materials and services incurred in connection with the projects.

The Plaintiff paid the second draw of $6,000 to the Debtor on December 23, 2005. The Plaintiff alleges that he paid this draw based on the Debtor's statement to him that he needed the funds to pay the excavator for services rendered to date, and that contrary to the representation, as evidenced by his bank statements, the Debtor used the check for purposes other than paying the excavator. Similarly, the Plaintiff asserts that the Debtor told him on or about January 6, 2006, that he needed another draw to pay the excavator; that when the Plaintiff asked him about a release, the Debtor told him that he had a release at home; and that based on this representation he paid the Debtor $4,200. According to a copy of the check and the Debtor's bank statements, the Debtor cashed this check without depositing it into a business account. While the evidence shows that Miller & Miller Construction Inc., the excavator used by the Debtor, was paid the sum of $3,250 on the account on January 12, 2006, presumably by the Debtor, the company was not paid in full for the work that it had performed on the Plaintiff's property in December 2005 and January 2006, necessitating payment from the Plaintiff of $7,840 on April 21, 2006.

The parties entered into the second contract on January 12, 2006, with the Plaintiff paying

6

the Debtor on that date a check in the amount of $6,566, the first draw under the second contract. The contract expressly provides that this draw to be used "for purchase of raw materials," and the Plaintiff recites in his affidavit that the Debtor told him when he obtained the draw that it would be used for materials and to pay the excavator for the work he was to perform under the new contract. Notwithstanding this representation, the evidence tendered by the Plaintiff establishes that the Debtor cashed the check and apparently used the proceeds for purposes other than the Plaintiff's projects.

The Plaintiff also recites in his affidavit that on or about on January 27, 2006, the Debtor requested and the Plaintiff paid him a check in the amount of $3,305 to pay for extra gravel for the drive ($305), an advance draw on the first contract ($1,000), and a partial draw on the second contract to purchase materials for the footers and to pay the excavator to dig the footers. The Plaintiff states that the Debtor "also presented [him] with documents from A.H. Harris & Sons, Inc., with 'paid' written on them, purportedly showing that he had paid for other materials for [Plaintiff's] job." As evidenced by the Debtor's bank statements and a copy of the check itself tendered by the Plaintiff in support of his summary judgment motion, the Debtor cashed the check and did not deposit the proceeds in any business account. The affidavit of Brent Woodford, regional credit manager at A.H. Harris & Sons, Inc., recites that "[i]t is not [his company's] practice to indicate that an order has been paid for by marking the picking ticket associated with that order with a handwritten notation." Moreover, Mr. Woodford states that Harris & Sons did not fill the orders set forth on the documents because the Debtor never paid for these orders.

The Plaintiff recites in his affidavit that on February 3, 2006, the Debtor "notified me that price of materials would be increasing shortly and that he could 'lock-in' the price on steel and other materials to be used in the construction of the ICF home/office and a retaining wall." The Plaintiff states that in reliance on this representation, he gave the Debtor a check in the amount of $9,440 on February 3, 2006. Based on a copy of the check and the Debtor's bank statements, the Debtor cashed the check while taking funds for himself in the amount of $4,996.37 and depositing the balance. The bank records do not indicate that any of the funds from the Plaintiff's check were used to pay for materials and services required under the Plaintiff's contracts.

7

The Plaintiff states in his affidavit that this same scenario took place a month later on or about March 3, 2006, when the Debtor again stated that the price of materials would be increasing and that he needed a check to lock-in the price. The Plaintiff states that based on this representation he gave the Debtor a check in the amount of $7,400, and the tendered bank statements indicate that although the check was deposited in the account of Big South Construction, the check proceeds were used for purposes other the Plaintiff's contracts.

The Plaintiff states in his affidavit that on or about March 17, 2006:

> [The Debtor] stated that he needed the last draw on the first contract to pay the excavator for returning to the job and completing the excavating work, including the terracing the hillside as per our agreement. I inquired about the release from the excavator for payment of the prior work and [the Debtor] represented to me that he had the release from the excavator and would furnish it to me. Based on these representations, I gave [the Debtor] a check for $3,500.

Consistent with past practices, the Debtor did not deposit the entire check in his business' bank account. Rather, the bank documents show that he took $1,500 in cash and only deposited $2,000, with it appearing that no checks were thereafter drawn for payment of materials and services for the Plaintiff's projects.

The Plaintiff recites in his affidavit that the Debtor abandoned the contract, completed none of the work for which he had been paid, and failed to deliver any of the materials for which he had been paid, except a small amount of gravel. As sought in the complaint and supported by his affidavit, the Plaintiff states that he has paid sums totaling $40,873.18[2] to the following suppliers for work and materials for which he had already paid the Debtor:

$7,840.00 to Miller and Miller Construction, Inc.

---

[2] In his complaint, the Plaintiff alleges that his damages caused by the Debtor's fraud are the additional sums totaling $40,873.18 that he had to pay to third parties for services or products that the Debtor failed to pay. However, in his affidavit, the Plaintiff states that he "paid an extra $51,670.40 for work and materials that I had already paid [the Debtor] for." In addition to the amounts set forth in the complaint, the Plaintiff's affidavit added the following: $4,544.15 to A.H. Harris & Sons, Inc. and Transit Mix Concrete for steel; $582.00 to R.D. Venerable for rental of a concrete pump; and $7,767.50 to KVS Builders for work on footers. No request has been made that the Plaintiff's recovery include these additional amounts. Accordingly, the Plaintiff's recovery in this regard will be limited to the amounts sought in the complaint.

>    $10,441.75 to Southeastern Contracting, Inc.
>
>    $1,051.04 to Rinker Materials
>
>    $2,382.91 and $5,777.18 to Transit Mix Concrete
>
>    $8,234.38[3] to Dominion Truss
>
>    $5,145.92[4] to The Contractor Yard and Godsey Supply Co.

In his letter to the court, the Debtor states that he brought on site everything needed for the footers, that work progressed slowly because of wet conditions, and that the Plaintiff was "very aware of this situation and wet conditions and advised that he would pay for the extra work and redo's from the rain." The Debtor also states that "[a]s for the checks [the Plaintiff] wrote, he was well aware of weather conditions and materials delivered or he would not have written the checks for the work." However, these remarks do not address the Debtor's failure to use the funds paid him by the Plaintiff to in turn pay for the materials and services associated with the Plaintiff's projects. Further, the Debtor does not deny in the letter that he made the asserted representations or that he failed to use the funds to pay for the materials and supplies for the Plaintiff's contracts. While the Debtor did deny making the representations and failing to pay for the materials and services in his answer, he has come forward with no proof contradicting the evidence submitted by the Plaintiff that he did not use the funds paid to him by the Plaintiff to pay for materials and services utilized on the Plaintiff's projects. Accordingly, the court concludes that the Plaintiff has established the first element of nondischargeability under § 523(a)(2)(A), that "the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth."

Similarly, this court concludes that the evidence established the second element, that "the debtor intended to deceive the creditor." Under Tennessee law, the use of construction funds for a

---

[3] The affidavit lists this amount as $8,324.38, which perhaps is an accidental transposition of the numbers.

[4] The affidavit lists this amount as $5,110.52.

purpose other than to pay for labor or materials on the specified project is prima facie evidence of fraud. Specifically, Tennessee Code Annotated § 66-11-140, as set forth at the time of the projects, provided as follows:

> Such use of the proceeds mentioned in §§ 66-11-137 through 66-11-139[5] for any purpose other than payment pursuant to written agreement between the parties or in accordance with the allocation of costs and profits under generally accepted accounting principles for construction projects shall be prima facie evidence of intent to defraud. Use of a single business bank account for multiple projects shall not be evidence of intent to defraud.

Tenn. Code Ann. § 66-11-140 (2005-06).

The evidence submitted by the Plaintiff establishes that only $4,444.57 of the $43,411 the Plaintiff paid the Debtor was expended by the Debtor for the materials and services required under the contracts. Absent some proof sufficient to overcome the prima facie intent to defraud established by the Debtor's failure to utilize the funds paid him by the Plaintiff for the Plaintiff's projects, the court must conclude that the Debtor acted with the intent to defraud.

The court makes a similar finding with respect to the representations that the Debtor was a licensed contractor. As previously stated, the state of North Carolina revoked the Debtor's license

---

[5] As it relates to this case, the statute implicated by the Debtor's actions is Tennessee Code Annotated § 66-11-138, which provided at the pertinent time as follows:

> (a) Any contractor, subcontractor, or other person who, with intent to defraud, uses the proceeds of any payment made to that person on account of improving certain real property for any other purpose than to pay for labor performed on, or materials furnished by that person's order for, this specific improvement, while any amount for which such person may be or become liable for such labor or materials remains unpaid, commits a Class E felony.
>
> (b) Notwithstanding the provisions of subsection (a), there is no violation of this section when:
>
>> (1) Funds are disbursed pursuant to written agreement; or
>>
>> (2) The use of funds received and deposited in a business account for use on multiple construction projects is based upon the allocation of costs and profits in accordance with generally accepted accounting principles for construction projects.

Tenn. Code Ann. § 66-11-138 (2005-06).

in 2002. The Plaintiff states in his affidavit that he asked the Debtor at least twice if he was a licensed contractor and that he informed the Debtor that he must have a valid Tennessee contractor's license or he would not employ his services for the project. Moreover, in the affidavits of James Montag and Nancy Hopping, both recite that the Debtor previously represented to them that he was a licensed contractor. Accordingly, the court concludes that the Debtor falsely represented that he was a licensed contractor in order to enter into the contracts with the Plaintiff.

The third element of nondischargeability under §523(a)(2)(A) is that the creditor justifiably relied on the false representation. "A logical prerequisite for justifiable reliance is a showing by the creditor that it 'actually relied' and that its reliance was then justifiable." *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 767 (Bankr. E.D. Tenn. 2003). "Under this standard, a creditor will be found to have justifiably relied on a representation even though 'he might have ascertained the falsity of the representation had he made an investigation.'" *Id.* In this case, the Plaintiff states in his affidavit that he relied on the representations that the Debtor had made to him, both as to his status as a licensed contractor and as to his statements regarding the use of the funds, and that there are no red flags in this case that would have made the Plaintiff's reliance unjustifiable. While the court questions why the Plaintiff did not demand that the Debtor provide him the releases showing that vendors had been paid before the Plaintiff made further disbursements to the Debtor, there is nothing in the record that establishes that Plaintiff's reliance on the Debtor's representations was not justified. Accordingly, there is no genuine issue of material fact as to the justifiable reliance element of §523(a)(2)(A).

The final element of nondischargeability is that the creditor's reliance was the proximate cause of the loss. "Proximate cause is established where the misrepresentation is a substantial factor in the loss and where the loss may be reasonably expected to result from reliance." *Wings & Rings, Inc. v. Hoover (In re Hoover)*, 232 B.R. 695, 700 (Bankr. S.D .Ohio 1999) (citing *Smith v. Young (In re Young)*, 208 B.R. 189, 200 (Bankr. S.D. Cal. 1997)). In other words, "there must be 'a direct link between the alleged fraud and the creation of the debt.'" *In re Copeland*, 291 B.R. at 767 (citations omitted). That link is established by the evidence in this case. The Plaintiff recites in his affidavit that he would not have employed the Debtor if he had known that he did not have a Tennessee contractor's license. And, but for the Debtor's representations that he was using the

draws to buy materials and pay for services, the Plaintiff would not have kept paying the Debtor and sustaining the losses occasioned by the Debtor's failure to use the funds to pay for those materials and supplies. Consequently, proximate causation has been demonstrated.

IV.

In addition to the common law fraud allegations of the complaint, the Plaintiff also alleges in the complaint that the Debtor's activities violate the provisions of the Tennessee Consumer Protection Act ("TCPA"), entitling him to an award of attorney fees. The TCPA provides a private right of action for any consumer who is the victim of "unfair or deceptive" acts in the course of trade or commerce. *Menuskin v. Williams*, 145 F.3d 755, 767 (6th Cir. 1998). Under § 47-18-109(e) of the TCPA: "Upon a finding by the court that a provision of this part has been violated, the court may award to the person bringing such action reasonable attorney's fees and costs." Including within the list of unfair or deceptive acts or practices set forth in the TCPA are:

> Representing that a person is a licensed contractor when such person has not been licensed as required by § 62-6-103 or § 62-37-104; or, acting in the capacity of a "contractor" as defined in §§ 62-6-102(3)(A), 62-6-102(5) or 62-37-103(5), and related rules and regulations of the state of Tennessee, or any similar statutes, rules and regulations of another state, while not licensed[.]

Tenn. Code Ann. § 47-18-104 (35). The court having concluding that the Debtor falsely held himself out as a licensed contractor, with an intent to deceive the Plaintiff, the Plaintiff may recover reasonable attorney fees and costs, in an amount subsequently to be determined.

Lastly, the court notes that in his memorandum of law filed in support of his summary judgment motion, the Plaintiff asks for an award of statutory damages under the TCPA, up to treble his compensatory damages. The Plaintiff recognizes in a footnote to the memorandum that he did not request treble damages in his complaint, but asserts that the court should consider awarding them pursuant to Federal Rule of Civil Procedure 54(c), which states that "every final judgment, except a default judgment, should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Under the TCPA, if the court finds that the use of the unfair or deceptive act or practice was "a willful or knowing violation of [the Act]," the court may award three times the actual damages sustained. Tenn. Code Ann. § 47-18-109(a)(3). An award of treble

damages for an intentional violation of the TCPA is permissive, depends upon the facts of each case, and lies within the sound discretion of the trial court. *Wilson v. Esch*, 166 S.W.3d 729, 731 (Tenn. App. 2004). "Like punitive damages, treble damages are not intended to compensate an injured plaintiff but rather to punish the defendant and deter similar conduct in the future." *Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 483-84 (M.D. Tenn. 1992).

The court concludes that treble damages are not appropriate in the present case. The Debtor has filed for bankruptcy relief and is no longer in business, such that the need to deter future misconduct is not longer a concern. Moreover, the court is concerned by the procedural posture of the Plaintiff's request and questions whether the Debtor has been sufficiently placed on notice that the Plaintiff is seeking the recovery of treble damages. Accordingly, the Plaintiff's request for treble damages under the TCPA is denied.

V.

In accordance with the foregoing, the court will enter an order granting the Plaintiffs' motion for summary judgment and award the Plaintiff a nondischargeable judgment against the Debtor in the amount of $40,873.18 along with reasonable attorney's fees and costs.

# # #